**TOOL AND DIE MAKERS LODGE NO. 78 INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, an unincorporated labor organization, Complainant,**

v.

**GENERAL ELECTRIC COMPANY X–RAY DEPARTMENT, a corporation, Respondent.**

**X–RAY LODGE NO. 1916, DISTRICT NO. 10 INTERNATIONAL ASSOCIATION OF MACHINISTS, AFL–CIO, an unincorporated labor organization, Complainant,**

v.

**GENERAL ELECTRIC COMPANY X–RAY DEPARTMENT, a corporation, Respondent.**

Nos. 58–C–272, 58–C–273.

United States District Court E. D. Wisconsin.

March 3, 1959.

Robert E. Gratz, Milwaukee, Wis., for complainants.

Quarles, Herriott & Clemons, Milwaukee, Wis., for respondent.

Stewart G. Honeck, Atty. Gen., amicus curiae for Wisconsin Employment Relations Board.

TEHAN, Chief Judge.

On August 6, 1958, complainants (labor organizations representing employees in a business affecting commerce) filed two complaints with the Wisconsin Employment Relations Board (hereinafter referred to as the Board), each complaint alleging that the respondent, the employer, has engaged and is engaging in unfair labor practices within the meaning of the Wisconsin Employment Peace Act, more particularly Section 111.06(1) (f), Wisconsin Statutes, in that the respondent has violated the existing collective bargaining agreement between the parties. Hearings were scheduled by the Board for September 15, 1958, at 10:00 o'clock A.M., and notices of hearing were mailed to the respondent on August 21, 1958.

On August 27, 1958, before further action was taken by the Board, respondent filed petitions for removal of the two cases in this court; on September 9, 1958, complainants filed motions to remand. Briefs were filed by the complainants, the respondent, and the Board as amicus curiae.

Respondent bases its right to removal on Section 1441 of Title 28 U.S.C. which provides:

"§ 1441. Actions removable generally

"(a) Except as otherwise expressly provided by Act of Congress, any civil action brought in a State court of which the district courts of the United States have original jurisdiction, may be removed by the defendant or the defendants, to the district court of the United States for the district and division embracing the place where such action is pending.

"(b) Any civil action of which the district courts have original jurisdiction founded on a claim or right arising under the Constitution, treaties or laws of the United States shall be removable without regard to the citizenship or residence of the parties. Any other such action shall be removable only if none of the parties in interest properly joined and served as defendants is a citizen of the State in which such action is brought.

"(c) Whenever a separate and independent claim or cause of action, which would be removable if sued upon alone, is joined with one or more otherwise non-removable claims or causes of action, the entire case may be removed and the district court may determine all issues therein, or, in its discretion, may remand all matters not otherwise within its original jurisdiction."

We shall first test whether these actions are actions "of which the district courts of the United States have original jurisdiction". The Unions here involved have initiated proceedings before the Board alleging breaches of contract by the employer which they denominate "unfair labor practices" in conformity with the language of the Wisconsin Employment Peace Act.[1]

It is the position of the respondent here that although the complainants do allege unfair labor practices it is clear that the actions in reality are simple suits based on alleged breaches of contract and the issue in each case is whether the employer has violated the terms of the collective bargaining contract. Respondent asserts further that the district courts of the United States have original jurisdiction of actions for viola-

---

1. Section 111.06, Wisconsin Statutes, defines an unfair labor practice as follows:
  "(1) It shall be an unfair labor practice for an employer individually or in concert with others:

\* \* \* \* \*
  "(f) To violate the terms of a collective bargaining agreement (including an agreement to accept an arbitration award)."

tion of labor contracts by virtue of Section 301(a) of the Labor Management Relations Act of 1947 and they are therefore removable.

■ Section 301(a) of the Labor Management Relations Act (29 U.S.C.A. § 185(a)) provides:

"§ 185. Suits by and against labor organizations—Venue, amount, and citizenship

"(a) Suits for violation of contracts between an employer and a labor organization representing employees in an industry affecting commerce as defined in this chapter, or between any such labor organizations, may be brought in any district court of the United States having jurisdiction of the parties, without respect to the amount in controversy or without regard to the citizenship of the parties."

There has been considerable litigation involving Section 301, and the various courts of appeals and trial courts have construed it differently in respect of whether Section 301(a) was purely jurisdictional or whether it was the source of substantive law. The Supreme Court, however, in the case of Textile Workers Union of America v. Lincoln Mills of Alabama, 1957, 353 U.S. 448, 77 S.Ct. 912, 923, 1 L.Ed.2d 972, resolved the question with its holding that Section 301(a) was more than jurisdictional, that it authorized federal courts to fashion a body of federal law for the enforcement of collective bargaining agreements.

The complainant Unions, however, state that the established test under 28 U.S.C. § 1441 is dependent upon the court having original jurisdiction of the subject matter of the action, and that since the alleged breaches of contract asserted here affect peculiar individual rights and benefits accruing to union members, as distinguished from violations which affect the Union as an entity, the federal court has no jurisdiction of the subject matter here under the doctrine of Association of Westinghouse Salaried Employees v. Westinghouse Electric Corp., 1955, 348 U.S. 437, 75 S.Ct. 489, 99 L.Ed. 510.

It appears, therefore, that the significant questions presented by the removal of these cases and the subsequent motions to remand are the following:

1. Is the Westinghouse case controlling, or does the later Lincoln Mills decision have greater application to the facts herein presented?

2. If the cases here under consideration are governed by the rationale of the Lincoln Mills decision, does the fact that State proceedings were initiated as state unfair labor practice charges before a state administrative body, rather than as common law actions in the State court, defeat the right of removal which would otherwise exist?

Federal courts, labor lawyers and legal scholars alike have been confounded in their attempts to distill from the Westinghouse case the precise holding in that case. The difficulty arises from the fact that the "majority" opinion, if it may be called such, is joined in by but three justices, and the author of that opinion in his dissenting opinion in the Lincoln Mills case seems by reasonable implication in that dissenting opinion to view the majority opinion in the Lincoln Mills case as denying any further vitality to the Westinghouse case.

In the Westinghouse case, the Union sued to recover unpaid wages on behalf of some 4,000 employees. The basic question concerned the standing of the Union to sue and recover on those individual employment contracts. The court held that such violations gave a cause of action to the individual employee and not to the Union.

■ The sum of the Westinghouse case seems to be that Section 301 may not be invoked to enforce "the uniquely personal rights" of employees or when the Union seeks to sue and recover on the "individual employment contracts." Textile Workers Union of America v. Lincoln Mills, etc., 353 U.S. 448, 456,

note 6, 77 S.Ct. 912, 917, 923, 1 L.Ed.2d 972.

■ The violations of the terms of the collective bargaining agreements set forth in the complaints herein are the unilateral changing of the seniority of one employee adversely affecting other employees (58–C–272) and failure to pay proper vacation pay, violation of seniority rights, dissolution of Department "F", failure to place a Floor Inspector on a particular job, and changing incentive rates (58–C–273).

While it is difficult to analyze all the implications of the instant Unions' complaints before the Board, it seems clear that most of the alleged contract violations could very well affect rights of the employees as a whole as distinguished from "uniquely personal rights" such as arise under individual employment contracts. Violations of seniority provisions do not affect a single employee. Rather, the upgrading of one may lead to the downgrading of another; the granting of promotional or other seniority rights (preference in layoff or recall) to one group of employees under one interpretation of the contract may well lead to unfair discrimination to others under a contrary interpretation. The closing of a department or failure to provide a Floor Inspector clearly are not violations of "uniquely personal rights."

We subscribe to the summation made in respondent's brief of the scope, impact and implications of the particular problems involved in this action:

"Seniority provisions are a prime illustration of a type of collective rights where the personal rights and status of any individual are dependent on the corollary rights of other members of the collective bargaining unit. An adjustment in the seniority rights of any individual may affect the relative rights of many other employees. The collective nature of seniority rights makes it imperative that the contract rights of all members of the collective bargaining unit be administered by a single representative.

"*  *  * the grievance over the dissolution of Department F * * * involves no personal rights whatever but is entirely a matter between the union and the company.

"It is difficult to see how, as a matter of federal law, a union can discharge its obligations under the National Labor Relations Act to act as the exclusive bargaining representative of employees if such matters as those alleged in this complaint arising as they do entirely and solely from the terms of the contract negotiated and administered by that union are to be treated as personal rights within the meaning of the Westinghouse doctrine. If such a view were adopted individual employees could sue for and perhaps obtain greater personal benefits at the expense of the group as a whole. Clearly such collective rights can only be enforced equitably by the collective bargaining agent as the representative of all the employees. A suit for violation of a contract by a labor organization against an employer to enforce such rights is thus a suit within the meaning of Section 301(a) and is within the original jurisdiction of the federal district courts."

It is our conclusion that this court would have original jurisdiction of these cases under the Lincoln Mills decision. The Westinghouse case, which, if still in effect at all, has been strictly limited to its facts and prevents jurisdiction only where "uniquely personal rights" are involved has no application to these cases since they both allege contract violations which affect the rights of the employees as a whole.

■ We are then left with the second question posed, i. e., does the fact that the State proceedings were initiated as State unfair labor practice charges before a State administrative body rather than as common law actions in the State court defeat the right of removal?

It is contended by the complainants that a proceeding before the Board is not

a civil action brought in a State court within the meaning of Section 1441(a) of Title 28 U.S.C., and is therefore not removable to this court.

In the construction of Federal statutes dealing with proceedings in State courts, it is clear that the Supreme Court of the United States has adopted a functional rather than a literal test. Thus the question of whether a proceeding may be regarded as an action in a State court within the meaning of the statute is determined by reference to the procedures and functions of the State tribunal rather than the name by which the tribunal is designated. Upshur County v. Rich, 1890, 135 U.S. 467, 10 S.Ct. 651, 34 L.Ed. 196; Prentis v. Atlantic Coast Line Company, 1908, 211 U.S. 210, 29 S.Ct. 67, 53 L.Ed. 150.

It appears to this court that the proceeding before the Wisconsin Employment Relations Board meets the test of a judicial proceeding within the meaning of the Federal Judicial Code. In respect of subject matter, we repeat again that although the matter is described as an unfair labor practice the action in reality is a simple suit based on alleged breach of contract. No unfair labor practices are alleged in the complaints other than ones arising from breach of contract. Under Wisconsin law an identical action could have been brought in the trial courts of the State of Wisconsin, and had the complainants elected so to do, there would be no question of the right of respondent to remove the cause to the Federal court.

In respect of the procedures employable before the Board, a review of the statutory language reveals its judicial character. The action is commenced by a complaint alleging the violation of the contract, the person complained of has the right to file an answer, and the Board sets the time for the hearing of the complaint. Section 111.07(2) (a). The Board has the power to issue subpoenaes to compel attendance of witnesses; depositions may be taken as in court actions. Section 111.07(2) (b). Any person failing or refusing to testify or produce books and records may upon application to a circuit court be punished for contempt. Section 111.07(2) (c). Witnesses before the Board receive the same fees and mileage as witnesses in court actions. Section 111.07(2) (d). A record is kept of all proceedings before the Board and such proceedings are governed by the rules of evidence prevailing in courts of equity. Section 111.07(3). The Board makes findings and enters an order stating its determination as to the rights of the parties, which order may require the person complained of to cease and desist from the contract violations found to have been committed and may require affirmative action including reinstatement of employees with or without pay. Section 111.07(4).

We do not ignore the fact that (1) the Supreme Court of the State of Wisconsin in the case of Dairy Employees Independent Union at Blochowiak Dairy v. Wisconsin Employment Relations Board, 1952, 262 Wis. 280, 55 N.W.2d 3, has ruled that the Board is not exercising judicial functions when it makes a determination; and (2) that the Board lacks the power to enforce its own orders, an attribute whose presence or absence is significant if not decisive on the question as to whether a tribunal is a court. However, under the view we take of this case we do not think it necessary to give consideration to the effect of these two factors.

The sovereign State of Wisconsin has the undoubted power to provide the procedure by which, and the forum before which, actions for breach of collective bargaining agreements will be resolved. State laws, however, which depart from traditional and customary usages and procedures, such as here, where the state has apparently divided the judicial function between a Board which hears the evidence and declares the facts and the law, and a State court which enforces its rulings, cannot operate to defeat the right of a litigant otherwise entitled to have his cause heard in Federal court.

It is well established that a State cannot directly or indirectly punish or prohibit the exercise of the right of removal.

"It may not be doubted that the judicial power of the United States as created by the Constitution and provided for by Congress pursuant to its constitutional authority is a power wholly independent of state action, and which therefore the several states may not by any exertion of authority in any form, directly or indirectly, destroy, abridge, limit, or render inefficacious." Harrison v. St. Louis & San Francisco Railroad Company, 1914, 232 U.S. 318, 328, 34 S.Ct. 333, 335, 58 L.Ed. 621.

The peculiarity under Wisconsin procedures whereby the judicial inquiry is divided between a Board which investigates and declares and a court which enforces liabilities as they stand as to present facts and under laws in existence, presents no obstacle to removal since the actions have the same essentials as original suits permissible in Federal district courts or in State trial courts.

In this respect it should also be observed that (1) it was the intention of Congress in enacting the removal statute that said statute be uniformly applied throughout the country. Barnes v. Parker, D.C.W.D.Mo.1954, 126 F.Supp. 649; McCargo v. Steele, D.C.W.D.Ark. 1957, 151 F.Supp. 435; and (2) the right of removal cannot be affected by the creation by the State of a special remedy as an alternative to a traditional court action. State ex rel. Glassell v. Shell Petroleum Corporation, D.C.W.D.La. 1937, 20 F.Supp. 795.

It is the conclusion of this court that these proceedings are properly removable under Section 1441 of Title 28 U.S.C. Our belief in the correctness of this holding is strengthened by our understanding of the Lincoln Mills case that State courts are no longer free to apply State law but must apply the Federal substantive law governing collective bargaining rights. See also McCarroll v. Los Angeles County District Council of Carpenters, 1957, 49 Cal.2d 45, 315 P.2d 322, 330.

The motions of the complainants to remand the cases to the Wisconsin Labor Relations Board are denied.